IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

VICKIE MILLER,

    Plaintiff,

v.                                                                  No. 05-2413 B

NIPPON CARBON COMPANY, LTD.,
MITSUBISHI LOGISTICS CORPORATION,
MITSUBISHI LOGISTICS AMERICA
CORPORATION and YANG MING
MARINE TRANSPORT CORPORATION,

    Defendants.

And

YANG MING MARINE TRANSPORT
CORPORATION,

    Third-Party Plaintiff,

v.

INTERMODAL CARTAGE COMPANY, INC.,

    Third-Party Defendant.

_____

ORDER GRANTING MOTIONS OF THE DEFENDANTS NIPPON CARBON COMPANY,
LTD AND MITSUBISHI LOGISTICS CORPORATION TO DISMISS
_____

    This diversity action for wrongful death arose when Larry Miller, the Plaintiff's decedent, was killed after an electrode fell on him as he attempted to offload it from a shipping container. Before the Court are the separate motions of the Defendants, Nippon Carbon Company, Ltd. ("Nippon Carbon") and Mitsubishi Logistics Corporation ("MLC"), to dismiss the claims of the

1

Plaintiff, Vickie Miller ("Miller"), pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Rule 12(b)(2) permits the court to dismiss a complaint for "lack of jurisdiction over the person." FED. R. CIV. P. 12(b)(2). A federal court may exercise jurisdiction over the person "in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). The Tennessee long-arm statute renders nonresidents subject to the "jurisdiction of the courts of this state as to any action or claim for relief arising from . . . [a]ny tortious act or omission within this state; [or] [a]ny basis not inconsistent with the constitution of this state or of the United States." TENN. CODE ANN. § 20-2-214(a). The Tennessee long-arm statute is "construe[d] to extend to the limits of due process." Neal v. Janssen, 270 F.3d 328, 331 (6th Cir. 2001).

> The Youn court instructed that,
>
> [t]he bedrock principle of personal jurisdiction due process analysis is that when the Defendant is not physically present in the forum, [it] must have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. "Minimum contacts" exist when the Defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there. It is necessary that the Defendant purposefully avail [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Random, fortuitous, or attenuated activity is not a constitutionally adequate basis for jurisdiction.

Youn, 324 F.3d at 417 (internal citations and quotation marks omitted).

Both "general" and "specific" jurisdiction may be adequate bases for personal jurisdiction. Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 981 (6th Cir. 1992). General jurisdiction exists "when the defendant's contacts with the forum state are 'substantial' and 'continuous and

systematic,' so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state." Youn, 324 F.3d at 417-18. A federal court has specific jurisdiction "when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

In Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit articulated a three-part test for determining the appropriateness of a federal court's exercise of specific jurisdiction: (1) "the defendant must purposefully avail [itself] of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Southern Machine Co., 401 F.2d at 381; see also Youn, 324 F.3d at 418. Failure to satisfy any one of the Southern Machine Co. elements "means that personal jurisdiction cannot be invoked." Southern Sys., Inc. v. Torrid Oven Ltd., 58 F.Supp.2d 843, 848 (W.D. Tenn. 1999).

With respect to the reasonableness element, the Supreme Court has cautioned that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); see also City of Monroe Employees Retirement Sys. v. Bridgestone Corp., 399 F.3d 651, 666 (6th Cir. 2005). "Great care and reserve should be

3

exercised when extending our notions of personal jurisdiction into the international field." Asahi Metal Indus. Co., 480 U.S. at 115, 107 S.Ct. at 1034 (quoting United States v. First Nat'l City Bank, 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)).  Whether the exercise of personal jurisdiction over a foreign defendant is "reasonable" requires a balancing of the following factors:  "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief."  Bridgestone Corp., 399 F.3d at 666 (citing Asahi Metal Indus. Co., 480 U.S. at 113, 107 S.Ct. 1026).

As the Defendants have challenged the Court's jurisdiction over them, the burden of establishing the existence of personal jurisdiction lies with the Plaintiff.  See Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002); Siebelink v. Cyclone Airsports, Ltd., No. 1:01-CV-591, 2001 WL 1910560, at *1 (W.D. Mich. Nov. 27, 2001).  In the absence of an evidentiary hearing on the jurisdiction question,

> the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.  To defeat such a motion, the plaintiff need only make a prima facie showing of jurisdiction.  Furthermore, a court does not weigh the controverting assertions of the party seeking dismissal.

Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998) (citations omitted).  The Plaintiff may not, however, rest on her pleadings "but must set forth specific facts showing that this Court has jurisdiction."  Siebelink, 2001 WL 1910560, at *1 (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)).

The electrodes at issue in this action were manufactured by Nippon Carbon in Japan and sold to Nuccor Corporation ("Nuccor"), a steel producer with facilities in Arkansas.  (Masuda Decl. at ¶¶ 11, 12.)  In April 2004, the electrodes were packaged in a container in Japan by a subcontractor. (Masuda Decl. at ¶ 11.)  The container was then shipped from Nagoya, Japan to Long Beach,

4

California by Yang Ming Marine Transport Corporation ("Yang Ming").  (Masuda Decl. ¶ 12; Second Amend. Compl. ("Compl.") ¶ 5; Pl.'s Supp. Resp. Def.'s Mot. Dismiss ("Pl.'s Supp. Resp."), Ex. F.)  Upon arrival in California, the container was subsequently shipped by rail and truck to President's Island, Tennessee.  (Compl. ¶ 5.)  In Tennessee, the contents of the container were offloaded by the decedent under the direction of his employer, Global Material Services, LLC ("GMS") in preparation for ultimate delivery by truck to Nuccor's plant in Blytheville, Arkansas. (Masuda Decl. at ¶ 12; Pl.'s Supp. Resp., Ex. H.)

The Court will consider jurisdiction for each Defendant in turn.  As both Defendants maintain that they have had no contacts with the state of Tennessee and the Plaintiff appears to concede that general jurisdiction is not present, the Court will focus on the issue of specific jurisdiction.

I. Nippon Carbon

Nippon Carbon is a Japanese corporation which manufactures and sells carbon-based products, including the graphite electrodes at issue in the instant case.  (Decl. Tadao Masuda "Masuda Decl.") at ¶ 1.)  In its motion, supported by the declaration of the managing director of its administrative division, Tadao Masuda, Nippon contends that it has never owned any property, maintained an office, plant or facility, or employed any person Tennessee.  (Masuda Decl. at ¶ 8.) The company is not licensed to do business in Tennessee and does not have an agent for service of process in the state. (Masuda Decl. at ¶ 8.)  Further, the company states that it does not advertise or solicit business in Tennessee.  (Masuda Decl. at ¶ 8.)  Approximately 2.7% of Nippon Carbon's electrode sales are to businesses in the United States.  (Masuda Decl. at ¶ 6.)  However, the company, at least since the year 2000, has not sold or shipped any product to a buyer in the forum.

(Masuda Decl. at ¶ 7.)

Miller argues in response to Nippon Carbon's motion to dismiss that because Nippon Carbon "participated in directing a specific load of cargo into Tennessee" which caused consequences in the state, jurisdiction in this forum is proper.  In support, Plaintiff cites the following shipping-related documents which reference the forum state: (1) a shipping invoice and packing list prepared by Nippon Carbon for Nuccor referencing shipment of the electrodes from Nagoya, Japan to Memphis, Tennessee with a final destination of Blytheville, Arkansas; (2) the Bill of Lading for Port to Port Shipment provided to Nippon Carbon by Defendant Mitsubishi Logistics America Corporation which refers to Memphis as the inter-modal cartage location, or the location where the mode of shipment changed from rail to truck cartage; (3) an estimate of transportation costs provided to Nippon Carbon by Mitsubishi Logistics which includes costs for "[t]hrough Freight from Nagoya CY to Memphis, TN CY" and "[i]nland Trucking from Memphis, TN CY to Brytheville [sic], AR door."  (Pl.'s Supp. Resp. Ex. A, C, D.)  On the basis of these documents, Miller contends that Nippon Carbon had knowledge that its products would "spend some amount of time in Tennessee" and thus, could reasonably have expected to be haled into court in this state.  (Pl.'s Supp. Resp. at 3.)

> In Asahi Metal Industry Co., Justice O'Connor wrote that
>
> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.  Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.  But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Asahi Metal Indus. Co., 480 U.S. at 112, 107 S.Ct. at 1032. Moreover, "[t]he use of interstate facilities (telephone, the mail) . . . and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." Kerry Steel, Inc. v. Paragon Industries, Inc., 106 F.3d 147, 151 (6th Cir. 1997) (quoting Scullin Steel Co. v. National Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir.1982)).

     Here, there is no evidence that Nippon Carbon designed its product for the Tennessee market, advertised or provided customer service outlets here, or that it marketed goods through a distributor who agreed to serve as its sales agent in Tennessee. Rather, the facts presented demonstrate that Nippon Carbon has no present contacts whatsoever with Tennessee except that its product was shipped through the state in transit to a final destination. While Plaintiff has made conclusory statements to the effect that knowledge of shipment through the forum state to a destination outside it militates presence in the forum, they have offered no case law support for their position. Following Plaintiff's logic, the shipment of the product would by itself subject Nippon Carbon to personal jurisdiction in any forum along the shipping or transit route from Japan to the intended consumer. The Court finds that this jurisdiction based on such a minimal contact is not consistent with due process. See Lakeside Bridge & Steel v. Mountain State Construction, 597 F.2d 596 (7th Cir. 1979) (noting that a holding that "any state through which the goods pass in transit could exercise jurisdiction over the defendant . . . would constitute an unwarranted expansion of the due process limits on the exercise of jurisdiction."). Even taking Plaintiff's allegations as to jurisdiction as true, other than utilization of modes of interstate commerce, there is no evidence that Nippon Carbon directed any conduct toward or indicated an intent or purpose to serve the Tennessee market. Because it did not purposefully avail itself of the Tennessee forum, the Court does not have personal

jurisdiction over this Defendant.[1]  See Southern Sys., Inc., 58 F.Supp.2d at 848.

## II. MLC

MLC is a Japanese corporation with its principal place of business in Tokyo, Japan.  (Aff. Robert Wallace ("Wallace Aff.") at ¶ 3.)  MLC does not own any property, maintain any office or place of business, or employ any persons in Tennessee.  (Wallace Aff. at ¶¶ 6, 8, 9.)  The company is not registered to do business in Tennessee nor does it have a registered agent for service of process in the state.  (Wallace Aff. At ¶¶ 5, 7.)  Plaintiff maintains that MLC arranged for the delivery of the electrodes from Japan Nuccor's plant in Blytheville, Arkansas.  (Pl.'s Resp. at 5; Masuda Decl. at ¶ 12.)  Based on a Sea Waybill issued by Yang Ming to MLC which designates Memphis, Tennessee as the place of delivery for the electrode shipment, Miller maintains that MLC had actual knowledge that the electrodes would be passing through Tennessee and could cause consequences while present in the state.  (Pl.'s Supp. Resp. at 4, Ex. F.)  On this basis alone, Plaintiff contends that jurisdiction in this Court is proper.

The Court finds that Plaintiff's argument is also without merit.  Similar to Nippon Carbon, MLC has no present contact with Tennessee.  Taking Plaintiff's assertions as true, at most, MLC was aware that the goods it arranged for delivery from Japan to Arkansas would pass through Tennessee in transit.  As discussed above, without more, this fact alone does not establish the minimum contacts with Tennessee necessary to satisfy due process concerns. See Asahi Metal Indus. Co., 480 U.S. at 112, 107 S.Ct. at 1032.

---

[1] Because the Court has found that it may not exercise personal jurisdiction over Nippon Carbon, it need not address the Defendant's argument that service of process was insufficient on grounds that the Plaintiff did not follow the requirements for international service established by the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention") and must therefore be quashed.

## CONCLUSION

Based on the forgoing, Plaintiff has failed to meet its burden of showing either general or specific personal jurisdiction in this Court over the Defendants Nippon Carbon or MLC. Accordingly, the respective motions of the Defendants, Nippon Carbon and MLC, to dismiss for lack of personal jurisdiction are hereby GRANTED.

IT IS SO ORDERED this 22nd day of March, 2006.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE